UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

SAMUEL W. HOWARD,

            Plaintiff,

        v.

CAROLYN COLVIN, Acting
Commissioner of Social Security,

           Defendant.

No.: 4:15-CV-5040-EFS

**ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

    Before the Court are cross-summary-judgment motions. ECF Nos. 13 & 15. Plaintiff Samuel Howard appeals the Administrative Law Judge's (ALJ) denial of benefits. ECF No. 13. Mr. Howard contends the ALJ erred because he 1) improperly rejected the opinions of Mr. Howard's medical care provider; 2) failed to find that Mr. Howard suffered from the severe impairments of diverticulitis/abdominal pain, chronic obstructive pulmonary disease (COPD), and sleep apnea; 3) improperly found Mr. Howard's subjective complaints regarding the intensity, persistence, and limiting effects of his impairments less than credible; and 4) failed to properly identify specific jobs, available in significant numbers in the national economy, which Mr. Howard could perform given his impairments. ECF No. 13 at 2. The Commissioner of Social Security ("Commissioner") asks the Court to affirm the ALJ's decision that Mr. Howard is capable of performing substantial gainful activity in a field for which a

ORDER - 1

significant number of jobs exist in the national economy. ECF No. 15 at 1. After reviewing the record and relevant authority, the Court is fully informed.  For the reasons set forth below, the Court grants Defendant's Motion for Summary Judgment and denies Plaintiff's Motion for Summary Judgment.

## A.    Statement of Facts[1]

Mr. Howard was born in 1961. Transcript of admin. hrg. ("Tr.") at 156. He has a limited education having only completed the ninth grade before obtaining his GED. Tr. at 558. Mr. Howard has been diagnosed with hepatitis C and alleges a number of physical disabilities including anxiety, depression, bipolar disorder, chronic fatigue, bad knees, shoulder problems, and left arm problems. ECF No. 4; Tr. 821 & 979. He cannot take pain medication because of his hepatitis C but has received approximately 10 injections to help with his knee pain. Tr. at 549 & 552-61. Mr. Howard spends his days watching TV and occasionally taking his dogs for a walk. Tr. at 553-55.

According to Mr. Howard's own testimony, he experiences significant pain in his back, knees, and neck that prevent him from working or doing any physical activity. Tr. at 548-50. His average pain level is around a six or seven but will occasionally spike to ten resulting in trips to the emergency room. Tr. at 560.

//

/

---

[1]  The facts are only briefly summarized. Detailed facts are contained in the administrative hearing transcript, the ALJ's decision, the parties' briefs, and the underlying records.

ORDER - 2

Mr. Howard has a very limited employment history. Tr. at 548. He worked as a house painter until approximately 2007. *Id.* This is the only job he has had in the last 15 years. *Id.*

**B.    Procedural History**

On August 6, 2008, Mr. Howard protectively applied for supplemental security income alleging a number of physical disabilities. Tr. at 156-62. His alleged onset date was July 16, 2008. *Id.* Mr. Howard's claim was denied initially and upon reconsideration on February 20, 2009. Tr. at 11. Mr. Howard filed a written request for an administrative hearing, which was held before ALJ R. J. Payne on August 2, 2010. *Id.* On August 27, 2010, ALJ Payne denied Mr. Howard's claim finding that he was not disabled under the Social Security Act. Tr. at 19. The Appeals Council denied review of the ALJ's decision. Tr. at 1-4. Mr. Howard then appealed the decision to the U.S. District Court for the Eastern District of Washington, which remanded the case for further proceedings. ECF No. 590-605. Mr. Howard then amended his alleged onset date to September 12, 2011. Tr. at 532.

On August 4, 2014, consistent with the District Court's decision, ALJ Payne held another administrative hearing to reevaluate whether Mr. Howard is disabled under the Social Security Act. Tr. at 457. Mr. Howard was present and testified at the hearing and was represented by counsel. *Id.* Dr. Darius Gahzi, M.D., and Dr. Nancy Winfrey, Ph.D., impartial medical experts, also testified at the hearing. *Id.* The hearing was continued to January 9, 2015, to allow the testimony of Dr. Robert Thomson, M.D., another medical expert. The hearing was continued a

second time to January 15, 2015, to allow for the testimony of Vocational Expert (VE) Daniel McKinney. *Id.*

On February 9, 2015, ALJ Payne issued his decision. The ALJ determined that Mr. Howard has the following severe impairments: bilateral knee tendinitis/osteoarthritis; left shoulder tendinitis; degenerative disc changes in the cervical, thoracic, and lumbar spine; hepatitis C; obesity; bipolar disorder II; and a history of polysubstance abuse. Tr. at 459-60. The ALJ proceeded to find that Mr. Howard's impairments do not meet or medically equal the severity of any listed impairments. Tr. at 461. Despite Mr. Howard's impairments, the ALJ ultimately found that Mr. Howard:

> has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) except he could sit, stand and/or walk up to two hours for each at a time and six hours total for each in an eight-hour day with normal breaks; he could occasionally crouch, kneel, and climb ramps, stairs, ladders, ropes, or scaffolds, but could never crawl; he could tolerate occasional exposure to unprotected heights; he could perform one to two step work instructions; he would perform better with visual instructions versus verbal instruction but could still accomplish one to two-step work tasks with verbal instructions only; he should have no interaction with children, but he could interact appropriately with most of the general public; he would do best with occasional supervision (no "over-the-shoulder" type of supervision); and he would be able to remain reasonably attentive and responsive in a work setting and could carry out normal work assignments satisfactorily despite and side effects from his medications.

Tr. at 463.

Based on this assessment, which was presented to the vocational expert, and based on Mr. Howard's age, education, work experience, and residual functional capacity, the ALJ concluded Mr. Howard can perform jobs that exist in significant numbers in the national economy, such as

ORDER - 4

Product Assembler, Electronics Worker, and Packing Line Worker, and is not disabled as defined by the Social Security Act. Tr. at 470.

On May 11, 2015, Mr. Howard filed this lawsuit appealing the ALJ's decision. ECF No. 1. The parties then filed the instant summary-judgment motions. ECF Nos. 13 & 15.

**C.    Disability Determination**

A "disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) The decision-maker uses a five-step sequential evaluation process to determine whether a claimant is disabled.  20 C.F.R. §§ 404.1520, 416.920.

Step one assesses whether the claimant is engaged in substantial gainful activities during the relevant period. If he is, benefits are denied. 20 C.F.R. §§ 404.1520(b), 416.920(b). If he is not, the decision-maker proceeds to step two.

Step two assesses whether the claimant has a medically severe impairment or combination of impairments. 20 C.F.R. §§ 404.1520(c), 416.920(c). If the claimant does not have a severe impairment or combination of impairments, the disability claim is denied. If the impairment is severe, the evaluation proceeds to the third step.

Step three compares the claimant's impairment with a number of listed impairments acknowledged by the Commissioner to be so severe as to preclude substantial gainful activity.  20 C.F.R. §§ 404.1520(d), 404

ORDER - 5

Subpt. P App. 1, 416.920(d). If the impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled. If the impairment does not meet or equal one of the listed impairments, the evaluation proceeds to the fourth step.

Step four assesses whether the impairment prevents the claimant from performing work he has performed in the past. This includes determining the claimant's residual functional capacity. 20 C.F.R. §§ 404.1520(e), 416.920(e). If the claimant is able to perform his previous work, he is not disabled. If the claimant cannot perform this work, the evaluation proceeds to the fifth step.

Step five, the final step, assesses whether the claimant can perform other work in the national economy in view of his age, education, and work experience. 20 C.F.R. §§ 404.1520(f), 416.920(f); *see Bowen v. Yuckert*, 482 U.S. 137 (1987).

The burden of proof shifts during this sequential disability analysis. The claimant has the initial burden of establishing a prima facie case of entitlement to disability benefits. *Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971). The claimant meets this burden if he establishes that a physical or mental impairment prevents him from engaging in his previous occupation. The burden then shifts to the Commissioner to show 1) the claimant can perform other substantial gainful activity, and 2) that a "significant number of jobs exist in the national economy" which the claimant can perform. *Kail v. Heckler*, 722 F.2d 1496, 1498 (9th Cir. 1984). A claimant is disabled only if his impairments are of such severity that he is not only unable to do his previous work but cannot, considering her age, education, and work

ORDER — 6

experiences, engage in any other substantial gainful work which exists in the national economy.  42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

**D.    Standard of Review**

On review, the court considers the record as a whole, not just the evidence supporting the ALJ's decision. *Weetman v. Sullivan*, 877 F.2d 20, 22 (9th Cir. 1989) (quoting *Kornock v. Harris*, 648 F.2d 525, 526 (9th Cir. 1980)). The court upholds the ALJ's determination that the claimant is not disabled if the ALJ applied the proper legal standards and there is substantial evidence in the record as a whole to support the decision.  *Delgado v. Heckler*, 722 F.2d 570, 572 (9th Cir. 1983) (citing 42 U.S.C. § 405(g)); *Brawner v. Sec'y of Health & Human Servs.*, 839 F.2d 432, 433 (9th Cir. 1987) (recognizing that a decision supported by substantial evidence will be set aside if the proper legal standards were not applied in weighing the evidence and making the decision). Substantial evidence is more than a mere scintilla, *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975), but less than a preponderance, *McAllister v. Sullivan*, 888 F.2d 599, 601-02 (9th Cir. 1989); *Desrosiers v. Sec'y of Health & Human Servs.*, 846 F.2d 573, 576 (9th Cir. 1988). "It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citations omitted). "[S]uch inferences and conclusions as the [ALJ] may reasonably draw from the evidence" will also be upheld. *Mark v. Celebrezze*, 348 F.2d 289, 293 (9th Cir. 1965). If the evidence supports more than one rational interpretation, the court must uphold the ALJ's decision. *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984).

ORDER - 7

**E.   Analysis**

The Court addresses each of Mr. Howard's challenges to the ALJ's decision.

**1.   Treating Physicians**

Mr. Howard contends that the ALJ failed to properly consider the opinions of his treating physician, Dr. Edward Lane, M.D. ECF No. 13 at 11. Dr. Lane treated Mr. Howard from December 2010 to August 2014. Tr. at 1082-84. During this time, Mr. Howard saw Dr. Lane approximately thirty times for a variety of medical issues including hepatitis C treatment, rib pain, stomach pain, back pain, earaches, knee and leg pain, and eating and sleeping trouble, as well as for routine visits such as to get a flu shot. *Id.* It is clear from the medical records that Dr. Lane is Mr. Howard's treating physician.

In an April 22, 2013 "check-the-box" questionnaire, Dr. Lane indicated that he believed Mr. Howard was incapable "of performing any type of work on a reasonably continuous, sustained basis . . . ." Tr. at 993. Despite Dr. Lane being Mr. Howard's treating physician, ALJ Payne assigned "little to no weight" to this opinion because it was based solely on "the claimant's self-reports and mild imaging findings." Tr. at 465. Plaintiff disagrees with the characterization that the imaging findings were "mild." Plaintiff points the Court to two records that indicate "disc changes of moderate to marked severity at C4-5 and C5-6 and progressive osteoarthritic changes in Mr. Howard's knees." ECF No. 13 at 12 (citing Tr. at 974 & 1034). However, the records Plaintiff relies on correspond with examinations conducted on September 23, 2013, and February 25, 2014, well after Dr. Lane filled out his form. Tr. at

974 & 1034. There is no way Dr. Lane would have been able to rely on these examinations in formulating his opinion. The Court finds no fault in the ALJ's characterization of Dr. Lane's April 2013 opinion.

On September 30, 2013, Dr. Lane filed out a physical functional evaluation of Mr. Howard. Tr. at 1069. Dr. Lane diagnosed Mr. Howard with degenerative joint disease (DJD) in his knees and COPD. Tr. at 1070. Dr. Lane believed that the COPD would limit Mr. Howard's ability to walk at a "moderate" level and the DJD would limit his ability to stand, walk, lift, carry, push, pull, and crouch at a "marked" level. *Id.* This time he indicated that Mr. Howard is limited to performing "sedentary" work. *Id.* Contrary to Plaintiff's assertions, Dr. Lane did not "find" that Mr. Howard suffers from bipolar/schizophrenic disorder, hepatitis C, or sleep apnea during this evaluation. *See* ECF No. 13 at 12. Dr. Lane simply noted that Mr. Howard subjectively complained of these issues. Tr. at 1070. The Court does acknowledge that other parts of the medical record indicate that Mr. Howard has these impairments. ALJ Payne again assigned "little weight" to Dr. Lane's September 2013 opinion because it was contradicted by the record. Tr. at 466. ALJ Payne first points out that Mr. Howard "never claimed COPD as a disabling impairment and the record does not show any significant symptoms for treatment for this condition." *Id.* Second, ALJ Payne noted that from June 2013 to February 2014 that Mr. Howard did not report any knee pain. *Id.* In response, Plaintiff argues that COPD is well established in Mr. Howard's medical records and that the lapse in complaints does not render Dr. Lane's opinions less credible. ECF No. 13 at 13.

ORDER - 9

ALJ Payne instead chose to rely on the findings of Dr. Naga Cheppali, M.D., Dr. Chaugle Shabnam, M.D., and Dr. Robert Thompson. Tr. at 466-67. Dr. Cheppali examined Mr. Howard in February 2014. Tr. at 1015-35. Mr. Howard reported to Dr. Cheppali that he was experiencing knee pain when he was sitting or going up and down stairs but he didn't experience much pain while he was walking. Tr. at 1015. Dr. Cheppali examined Mr. Howard and found normal knee alignment, normal skin and soft tissues, and no effusion. Tr. at 1016. Dr. Cheppali noted that Mr. Howard responded well to injections in the past and recommended another trial round of hyaluronic acid injections. *Id.* Mr. Howard saw Dr. Cheppali multiple times between March and May 2014 for the prescribed injections. Tr. at 1017-32. Mr. Howard notes that the injections seemed to help some. Tr. at 1021.

Dr. Shabnam examined Mr. Howard in September 2014. Tr. at 1113-16. Mr. Howard complained to Dr. Shabnam of leg pain particularly in the knee. Tr. at 1113. Dr. Shabnam attributed this pain to varicose veins and ordered an ultrasound to evaluate for valvular incompetency. Tr. at 1115-6. Dr. Shabnam instructed Mr. Howard to come back after the ultrasound for a follow-up appointment. *Id.* There is no record of this follow-up appointment in the medical history provided to the Court.

Dr. Thompson was a non-examining medical expert who reviewed Mr. Howard's medical records and testified before ALJ Payne on January 5, 2015. Tr. at 540. Dr. Thompson acknowledged the arthritis in Mr. Howard's knee but did not agree with Dr. Lane's assessment of the functional limitations that accompanied the diagnosis. Tr. at 541. According to the evidence, Dr. Thompson believes that Mr. Howard should

be able to lift up to 10 pounds frequently and between 20 and 50 pounds occasionally, but he would warn against ever lifting more than 50 pounds due to the arthritic knee. *Id.*

"In disability benefits cases, physicians may render medical, clinical opinions, or they may render opinions on the ultimate issue of disability—the claimant's ability to perform work." *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014) (quotation omitted). There are three types of physicians: treating physicians, examining physicians, and nonexamining physicians. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). "As a general rule, more weight should be given to the opinion of a treating source than to the opinion of doctors who do not treat the claimant." *Id.* The ALJ must provide "clear and convincing" reasons for rejecting an examining physician's opinions and may not reject such opinions without providing "specific and legitimate reasons" supported by "substantial evidence" in the record for so doing. *Id.* "An ALJ can satisfy the 'substantial evidence' requirement by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Garrison*, 759 F.3d at 1012 (internal quotations omitted).

In this case, Dr. Lane was a treating physician and his opinion would normally be given the greatest weight. However, there were two other treating physicians, Dr. Cheppali and Dr. Shabnam, whose medical records were inconsistent with the opinion of Dr. Lane. Furthermore, there was a nonexamining physician whose testimony as to Mr. Howard's functional limitations were more consistent with their findings. The ALJ evaluated all of these facts and found Dr. Lane's assessment that Mr.

Howard could not do any work, or later that he could only do sedentary work, inconsistent with the medical record. Based on all of the evidence in the record, the Court finds that the ALJ gave clear and convincing reasons prior to giving little weight to Dr. Lane's opinion and that he satisfied the substantial evidence requirement by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings. Therefore, the Court finds that the ALJ did not err in assigning little weight to Dr. Lane's opinion.

**2.    Mr. Howard's Severe Impairments**

Mr. Howard contends that the ALJ failed to find that he suffered from the severe impairments of diverticulitis/abdominal pain, COPD, and sleep apnea. ECF No. 13 No. 13-14. As previously stated, the ALJ found that Mr. Howard suffered from the following severe impairments: bilateral knee tendinitis/osteoarthritis; left shoulder tendinitis; degenerative disc changes in the cervical, thoracic, and lumbar spine; hepatitis C; obesity; bipolar disorder II; and a history of polysubstance abuse. Tr. at 459-60. However, diverticulitis/abdominal pain, COPD, and sleep apnea were not found to be severe impairments.

"An impairment or combination of impairments may be found not severe *only if* the evidence establishes a slight abnormality that has no more than a minimal effect on an individual's ability to work." *Webb v. Barnhart*, 433 F.3d 683, 686 (9th Cir. 2005) (italics in original). "[A]n ALJ may find that a claimant lacks a medically severe impairment or combination of impairments only when his conclusion is clearly established by medical evidence." *Id.*

ORDER - 12

At the outset, it is important to note that Mr. Howard filled out many disability reports during his social security application process and none list any of these three alleged impairments. Tr. at 171, 188, 201, & 821. All of the disability reports claim impairments relating to knee, back, and neck pain, and some mental health issues. *Id.* Respiratory issues, abdominal pain, and sleep apnea were not alleged. *Id.* Even during Mr. Howard's January 5, 2015 testimony before the ALJ, he did not complain of abdominal pain, COPD, or sleep apnea. His repeated complaints related to knee, back, and neck pain. *See* Tr. 548-64.

Nonetheless, the ALJ considered these issues in his opinion. In regards to Mr. Howard's abdominal pain, the ALJ noted that Mr. Howard began complaining of abdominal pain and was prescribed an acid reducer. Tr. at 461. The ALJ pointed out that Mr. Howard's abdominal CT came back normal and concluded that the evidence was not sufficient to show that the impairment lasted more than 12 months. *Id.* In fact, none of the medical experts the Court considered listed any functional limitation resulting from stomach pain. *See* Tr. at 546, 1070. Even Mr. Howard's preferred medical expert, Dr. Lane, did not list abdominal pain on either of his questionnaires as a limiting impairment. Tr. at 993, 1070. The Plaintiff is correct that there is some evidence in the medical record to show that Mr. Howard has suffered from abdominal pain in the past. Tr. at 841, 850, 942, 965, 1058, 1060, & 1064. However, many of these records relate to short term or temporary complaints. *See, e.g.,* Tr. at 942. And one physician attributed Mr. Howard's stomach problems to marijuana use. Tr. at 965. Therefore, the Court finds that the

ORDER – 13

medical evidence establishes that Mr. Howard's stomach pain is a slight abnormality that has no more than a minimal effect on his ability to work. As a result, the Court finds that the ALJ did not err in not listing diverticulitis or abdominal pain as a severe impairment.

As to Mr. Howard's alleged COPD, the ALJ also considered this impairment despite the fact that Mr. Howard never listed it on his disability reports. The only medical expert who listed COPD as a limiting impairment was Dr. Lane who listed it as a "moderate impairment." Tr. at 1070. As previously stated, the ALJ appropriately gave Dr. Lane's opinion little to no weight. Furthermore, the ALJ found that the "evidence does not support" Dr. Lane's opinion that Mr. Howard suffered from COPD given it was never "claimed" as a "disabling impairment" and the "record does not show any significant symptoms or treatment for this condition." Tr. at 466. The Court agrees. While COPD and respiratory issues reoccur throughout Mr. Howard's medical condition, the record does not show that it was a significant complaint of Mr. Howard's or that Mr. Howard received treatment for the impairment. Therefore, the Court finds that the medical evidence establishes that Mr. Howard's COPD is a slight abnormality that has no more than a minimal effect on his ability to work. As a result, the Court finds that the ALJ did not err in not listing COPD as a severe impairment.

Finally, as to Mr. Howard's sleep apnea, again, Mr. Howard did not list sleep apnea on his disability report. This time, however, the ALJ did not consider whether Mr. Howard's alleged sleep apnea was a severe impairment in his opinion. This is immaterial in this case. The medical

ORDER - 14

evidence is not sufficient to prove that Mr. Howard's sleep apnea is a severe impairment. In the medical records provided by Dr. Lane, Mr. Howard's primary care provider, there is only one notation indicating the existence of sleep apnea. Tr. at 1084. In May 2011, Dr. Lane noted that Mr. Howard visited for "sleep apnea concerns." Tr. at 1084. After that, sleep apnea was not mentioned in Dr. Lane's records as a reason for a visit. Finally, it is noteworthy that Dr. Lane did not list sleep apnea as an impairment on his physical function report dated submitted in 2013. Tr. at 1070. Therefore, the Court finds that the medical evidence establishes that Mr. Howard's sleep apnea is a slight abnormality that has no more than a minimal effect on his ability to work. As a result, the Court finds that the ALJ did not err in not listing sleep apnea as a severe impairment.

Based on all of the medical evidence, the Court finds that the ALJ did not err in not listing diverticulitis/abdominal pain, COPD, and sleep apnea as severe impairments.

### 3. Mr. Howard's Subjective Complaints

Mr. Howard argues the ALJ failed to provide valid reasons for considering his testimony regarding the severity and limiting effects of his impairments as less than credible.

A two-step analysis is used by the ALJ to assess whether a claimant's testimony regarding subjective pain or symptoms is credible. *Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014). Step one requires the ALJ to determine whether the claimant presented objective medical evidence of an impairment, which could reasonably be expected to produce some degree of the pain or other symptoms alleged. *Lingenfelter*

*v. Astrue*, 504 F.3d 1028, 1035–36 (9th Cir. 2007); *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996). Objective medical evidence of the pain or fatigue, or the severity thereof, need not be provided by the claimant. *Garrison*, 759 F.3d at 1014. If the claimant satisfies the first step of this analysis, and there is no evidence of malingering, the ALJ must accept the claimant's testimony about the severity of his symptoms unless the ALJ provides specific, clear, and convincing reasons for rejecting the claimant's symptom-severity testimony. *Id.* An ALJ is not "required to believe every allegation of disabling pain" or other non-exertional impairment. *Orn v. Astrue*, 495 F.3d 625, 635 (9th Cir. 2007). However, to discredit a claimant's testimony when a medical impairment has been established, the ALJ must provide specific, cogent reasons for the disbelief. *Id.* Factors that an ALJ may consider in weighing a claimant's credibility include reputation for truthfulness, inconsistencies in testimony or between testimony and conduct, daily activities, and unexplained, or inadequately explained, failure to seek treatment or follow a prescribed course of treatment. *Id.*

In this case, the ALJ fully documented the testimony of Mr. Howard as to the intensity, persistence, and limiting effects of his impairments. Tr. at 464. The ALJ then found that Mr. Howard's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, [his] statements concerning the intensity, persistence and limiting effects of the symptoms are not entirely credible . . . ." Tr. at 464. The ALJ then continued on for approximately five pages outlining Mr. Howard's medical history and how it is inconsistent with Mr. Howard's testimony regarding the severity of

ORDER - 16

his symptoms. Tr. at 464-69. The ALJ reviewed the opinions of Dr. Opara and how Dr. Opara believed that Mr. Howard could "stand and/or walk up to six hours, lift and/or carry 10 pounds frequently and 20 pounds occasionally, and he had no postural, manipulative, or environmental limitations." Tr. at 465. The ALJ reviewed the opinion of Dr. Lane and reiterated that it received little weight as it was the only opinion that suggested that Mr. Howard was incapable of working on any sustained level. *Id.* The ALJ reviewed the second opinion of Dr. Opara and how he found no physical limitations based on a physical examination. Tr. at 466. The ALJ reviewed the records of Dr. Cheppali who found "no effusion, normal knee alignment, and minimal joint tenderness." The ALJ noted that Dr. Cheppali recommended treatment for which Mr. Howard never returned. *Id.* The ALJ reviewed the records of Dr. Shabnam who diagnosed Mr. Howard's leg pain as varicose veins and advised that Mr. Howard return for symptom management. Tr. at 467. Again there is no record of Mr. Howard returning. *Id.* The ALJ reviewed the opinion of Dr. Thompson and how, based on the entire medical records, Dr. Thompson believed that Mr. Howard was capable frequently lifting 10 pounds and occasionally lifting 20 to 50 pounds. *Id.* Dr. Thompson believed that Mr. Howard could also crouch, kneel, and climb. *Id.*

Based on all of this medical evidence, as compared with Mr. Howard's disability reports and testimony regarding the severity, intensity, and limiting effects of his impairments, the ALJ found that Mr. Howard's subjective statements were not credible as they were sufficiently contradicted by the medical evidence. Tr. at 465. This Court agrees and finds that the ALJ provided specific, clear, and

convincing reasons for rejecting the claimant's symptom-severity testimony and did not err in finding Mr. Howard's testimony not entirely credible.

### 4.    Specific Jobs in the National Economy

Finally, Mr. Howard contends that the ALJ failed to properly find that there are jobs that exist in significant numbers in the national economy that Mr. Howard can perform. ECF No. 13 at 17-18. Specifically, Mr. Howard argues that the ALJ failed to include the opinions of Dr. Lane in proffering the hypothetical to the VE and that once Plaintiff's counsel did so in his hypothetical, the VE testified that Mr. Howard was incapable of maintaining competitive employment. ECF No. 13 at 17.

During the January 9, 2015 hearing, VE Daniel McKinney appeared and testified. Tr. at 565. The ALJ asked the VE:

> Assume an individual who would be in his or her early 50's to just shy of mid-50's who has a GED, with average ability to read and write and use numbers. And who has the same past relevant work experience as the claimant in this case. Assume this individual capable of performing work at the following exertional and non-exertional levels. The person would be able to sit two hours, stand two hours, walk six hours in an eight hour day with normal breaks. Lift no more than 20 pounds occasionally, lift or carry 10 pounds frequently. Non-exertionally, there would be occasional crouching, occasional kneeling, no crawling. Occasional ramps or stairs. And occasional ladders, ropes or scaffolds. Those were in the postural areas. In the environmental area, there would be occasional unprotected heights. Who also has the mental limitations for the hypothetical given to you in the narrative form. Assume the individual can perform one to step work instructions. This individual does better with visual instructions versus verbal instructions only. No interaction with children but could interact appropriately with most of the general public. Would do best with occasional supervision, no over the shoulder type of supervision. Assume further that the individual has

> physical and mental symptomatology and that the individual takes prescriptions medication for the symptomatology. However, despite any side effects of the medication, the individual would be able to remain reasonably attentive and responsive in a work setting and would be able to carry out normal work assignments satisfactorily. Considering the hypothetical, could the individual – well, it's clear he couldn't perform past work, is that correct?

Tr. at 570-71 (errors included in transcript). The VE responded, "That's correct." Tr. at 571. The ALJ then asked if there were any other jobs in the national economy that the individual could perform. After some clarifying questions, the VE informed the ALJ that there were jobs in the national economy such a person could perform, including Production Assembler 706.687-410, Electronics Worker 726.687.014, and Packing Line Worker 753.687-438. Base on this testimony, the ALJ found that there are jobs that exist in significant numbers in the national economy that Mr. Howard can perform. Tr. at 470-71. Plaintiff believes the hypothetical proffered to the VE was incomplete and, therefore, the ALJ's determination was improper. ECF No. 13 at 17.

"If an ALJ finds a severe impairment at step two, that impairment must be considered in the remaining steps of the sequential analysis." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1228 (9th Cir. 2009). If the hypothetical posed to the vocation expert "does not reflect all the claimant's limitations, we have held that the expert's testimony has no evidentiary value to support a finding that the claimant can perform jobs in the national economy. *DeLorme v. Sullivan*, 924 F.2d 841, 850 (9th Cir. 1991). The hypothetical should be based on "accurate, detailed, and supported by the medical record." *Osenbrock*, 240 F.3d at

ORDER - 19

1165 (quoting *Tackett v. Apfel*, 180 F.3d 1094, 1101 (9th Cir. 1999)).
However, it is "proper for an ALJ to limit a hypothetical to those
impairments that are supported by substantial evidence in the record."
*Id.*

Mr. Howard contends that the ALJ erred in formulating the
hypothetical because it failed to incorporate Dr. Lane's opinion as to
Mr. Howard's functional limitations and Mr. Howard's subjective
complaints as to his limitations. As previously discussed, however, Dr.
Lane's opinions were properly given little weight by the ALJ because
they were contradicted by substantial medical evidence. And Mr. Howard's
subjective complaints were properly found to be less than credible
because they were contradicted by substantial medical evidence. Finally,
Mr. Howard contends that the ALJ erred in not including Dr. Winfrey's
opinions as to the functional limitations posed by Mr. Howard's mental
health conditions. The ALJ agreed with Dr. Winfrey that "the claimant
would have moderate limitations in his social functioning," and
limitations as to "concentration, persistence, and pace." Tr. at 462.
The Court finds that these issues raised by Dr. Winfrey were
sufficiently included in the hypothetical submitted to the VE. For
instance, the ALJ included in his hypothetical Plaintiff's limitation to
"one to step work instructions," his ability to "interact appropriately
with most of the general public," his need for "no over the shoulder
type of supervision," his preference for "visual instructions versus
verbal instructions only," his ability to "remain reasonably attentive
and responsive," and other descriptions of Mr. Howard's mental
functional capacity. Tr. at 570-71.

ORDER - 20

Based on a review of the entire medical record, the Court finds that the hypothetical was "accurate, detailed, and supported by the medical record" but only included those impairments that were "supported by substantial evidence in the record." *Osenbrock*, 240 F.3d at 1165. Therefore, the ALJ did not err in formulating the hypothetical or finding that Mr. Howard is not disabled under the Social Security Act.

**C.   Conclusion**

For the above-given reasons, the Court denies Plaintiff's Motion for Summary Judgment and grants Defendant's Motion for Summary Judgment.

Accordingly, **IT IS HEREBY ORDERED:**

1.   Mr. Howard's Motion for Summary Judgment, **ECF No. 13**, is **DENIED.**

2.   The Commissioner's Motion for Summary Judgment, **ECF No. 15**, is **GRANTED**.

3.   The Clerk's Office is to enter **Judgment** in favor of the Commissioner.

4.   The case shall be **CLOSED.**

**IT IS SO ORDERED.**   The Clerk's Office is directed to enter this Order and provide copies to all counsel.

**DATED** this 17th day of February 2016.


_____s/Edward F. Shea_____
EDWARD F. SHEA
Senior United States District Judge

Q:\EFS\Civil\2015\5040.social.sec.lc2.docx

ORDER - 21